Jewell D. LEMONS, Appellant,

v.

Vernon R. DAVIS, Appellee.

No. 15838.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 27, 1957.

Rehearing Denied Oct. 25, 1957.

Herbert Oliver, W. W. Palmer, San Antonio, and Alfred M. Scott, Austin (on appeal only), for appellant.

James E. Whitmore, M. Hendricks Brown and Walter E. Jordan, Fort Worth, for appellee.

MASSEY, Chief Justice.

Vernon R. Davis, as plaintiff, sued his sister Jewell D. Lemons, as defendant, upon several notes. Defendant replied to plaintiff's suit with pleadings under oath denying the execution of the notes, or their execution under her authority, plus allegation that her physical and mental condition as of the time said notes were executed (if they were executed) inhibited their legality, and/or under the circumstances were executed because of plaintiff's fraud and coercion, and under duress.

Plaintiff plead in the alternative to his suit on the notes that if in fact defendant was temporarily incapacitated from transacting or attending her affairs, as she alleged, that the several amounts represented by the notes sued upon were deposited to the defendant's account and were expended therefrom and used wholly and solely for the benefit of the defendant. Plaintiff plead estoppel against defendant's denial of the execution of the notes and against her disclaimer of liability thereupon.

Defendant filed a cross-action against plaintiff, alleging that while in a fiduciary capacity as her agent during the period of her temporary incapacity he had taken possession of her funds and had expended therefrom, without authority—either express or implied, certain enumerated sums represented by checks on her account and amounting to the total sum of $968.56, for the recovery of which she prayed.

The jury found that defendant did sign the notes as alleged by plaintiff and had sufficient mental capacity to know and understand at the time of such signing the nature and consequences of each act. The jury further found that certain enumerated sums represented by checks written by plaintiff on defendant's account, amounting to the total sum of $836.23, were expended for the defendant's benefit. No question submitted was answered in favor of the defendant.

Based upon plaintiff's primary claim, and the jury findings relative to the notes,— judgment was entered in favor of the plaintiff and against the defendant on the notes, plus interest due thereon, and for attorney's fees and costs (including the costs of two prior trials ending in mistrials).

The defendant appealed.

Judgment is affirmed.

The parties will be styled as they were in the trial court.

Defendant has assigned thirty-eight points of error. We will endeavor to dispose of them without discussing them individually but by what we will say upon the whole record, bearing in mind each point presented.

The defendant was involved in a most serious automobile accident which resulted in consequential injuries to herself. Her sister died as result of injuries sustained in the accident. The defendant's injuries involved mental processes as well as the physical. The record, considered most favorable to plaintiff, since defendant's objections and exceptions to the court's charge were the usual ones of "no evidence" and "insufficient evidence", disclosed that for a period of several months defendant would at times be quite rational, and then would have periods where she would be irrational. She was undergoing medical treatment during this period. She signed the notes during periods when she was rational and knew and understood the nature and consequences of her signing. Such was the effect of findings by the jury. There is no question but what plaintiff did furnish the money represented by the notes, and did deposit them in an account opened for the purpose. He wrote checks on this account in the course of taking charge of defendant's medical treatment and business affairs during the first few months of her disabilities.

Defendant obviously was of the opinion (as of the time of the trial) that the psychiatric treatment and hospitalization pursuant thereto, administered during her disability, was ill-advised and unnecessary. The jury seemed to have believed the contrary. Plaintiff arranged for that character of treatment and used defendant's money to pay for it. The payments were made from the account into which the funds represented by the notes had been deposited. The majority of the total number of the checks written by plaintiff were submitted to the jury in the charge under plaintiff's alternative theory and each check submitted was found to have been expended for defendant's benefit. Of course, the judgment ultimately rendered was upon the special issue findings upon the matter of the notes and not on the usage made of defendant's funds.

On the two previous trials it seems to have been agreed that mistrials occurred through the failure of the jury to agree upon three checks which had been written by plaintiff upon the account in question. They were: (1) A $20 check payable to the Probate Clerk of Tarrant County for court cost deposit in a case filed by plaintiff in which he sought appointment as guardian of the defendant's person and estate on the ground that she was of unsound mind. (2) A $5.63 check payable to a Fort Worth attorney for a long-distance call to an agent of the plaintiff in San Antonio, who was there contrary to defendant's desires, to close up and surrender the leases on her apartment and office. (3) A $106.70 check payable to plaintiff himself to cover his personal expenses, in part for reimbursement for a trip to the point of defendant's accident, following which he took charge of defendant's person for the purpose of caring for her during her disability, and in part for reimbursement for trips to San Antonio and Houston pursuant to the taking charge of defendant's business at those places. Upon the trial from which this appeal has been taken plaintiff's attorney decided to delete special issues submitting the question of whether these three checks were executed for defendant's benefit. As has been noted, the special issues dealing with the plaintiff's expenditures from defendant's account were issues which submitted plaintiff's case under his alternative theory.

While defendant did not request the submission of issues upon the final trial inquiring about the foregoing three checks, in compliance with Texas Rules of Civil Procedure, rule 273, nor object under Rule 274 because they were not submitted (thereby waiving right to complain on appeal), she nevertheless contends that error resulted because they were not either submitted or treated as having been of no benefit to her when the judgment was entered. Basically, as we understand her position, she claims that a fiduciary relationship existed which her pleadings were broad enough to encompass and that the plaintiff bore the burden of establishing that the

expenditures in question were for her benefit, failing which—presumption would obtain that the contrary would be true and therefore she would be entitled to judgment in so far as such·expenditures were considered.

■ We perceive no error. Aside from the question of pleadings, the defendant's case was one upon which she carried the burden of establishing any misuse or waste of her funds. Having not discharged the burden, and having not obtained a jury finding in her favor upon the question, no error appears in the complete disregard of the issues submitted on plaintiff's alternative theory and the questions akin thereto which would apply to the three checks discussed. For defendant to have benefitted she should have requested and had submitted special issues inquiring whether she was entitled to judgment on her cross-action on account of plaintiff's improper expenditures made from the fund entrusted to him. Not having done so, any question thereupon passed out of the case.

For like reasons, the contention that the court tried and disposed of the case under an erroneous legal theory,—as a suit on notes rather than as a trust case, was not preserved for purposes of appeal. Our examination of the statement of facts does not disclose that defendant was restricted in advancing her theories under her pleadings. She filed no specially requested issues in compliance with T.R.C.P. 273, nor did she make any objection or exception to the charge on the claim that special issues were absent therefrom which should have been included. Her objections to the issues which were submitted were on evidentiary grounds, i. e., "no evidence" and "insufficient evidence". Even if we should treat T.R.C.P. 274 as having application to this case, the defendant would not be benefitted, no fundamental error question being involved.

■ The jury findings were each and every one supported by sufficient evidence to sustain them and the court's judgment based upon them. Of course the evidence was directly contradictory upon almost every point at issue, but this evidence we view in the light most favorable to the prevailing party, as is our duty. No good purpose would be served by outlining such evidence as there was, and we will not do so.

■ Defendant objected and took exception to that part of the charge of the court in which "mental capacity" was defined. The instruction to the jury was that, as used in the charge, the term meant "that the person making an ordinary contract must be able to understand the nature and probable consequences of his act in entering into the agreement. In this connection you are instructed that the persons contracting are presumed to have mental capacity until the contrary is shown." The issues of the charge to which the definition related were those appended conditional to an answer in the affirmative, or "yes", that the defendant did sign each of the notes upon which plaintiff's primary case was founded. They inquired whether the defendant had such "mental capacity" upon the occasion each of the notes was signed, and the jury answered as to each that defendant did have such "mental capacity" at the times inquired about.

The objection made was upon the ground that the inclusion of the definition constituted a general charge, and that it amounted to a comment on the weight of the evidence. The definition was correct in its terms. 10 Tex.Jur., p. 60, "Contracts", sec. 33, "Mental Competency"; 24–A Tex.Jur., p. 462, "Insane and Incompetent Persons", sec. 7, "Tests of Mental Capacity". The burden was properly placed upon the defendant on the special issues, she having asserted her want of mental capacity at the times in question. Swink v. City of Dallas, Tex.Com.App. 1931, 36 S.W.2d 222. We do not believe the giving of the instruction and definition constitutes a general charge. It does not, of necessity, inform the jury of the

effect of findings made to issues bearing upon the subject of "mental capacity" upon the judgment which was to be entered. Nor do we believe that the instruction amounted to a comment upon the weight of the evidence. No part of the instruction indicates the opinion of the trial judge, and proper limitation of the term's definition was adhered to.

The defendant complained because of certain events transpiring during the course of the trial. She believed that the trial court's repeated admonishment of her (to answer questions responsively) was reasonably calculated to and did influence the jury against her to her prejudice. She believed that the court erred in excluding from evidence some photographs of the automobile in which she sustained her injuries. She claimed that the court erred in permitting the plaintiff to testify about why he filed the suit for appointment as defendant's guardian. She claimed the court erred in denying her the right, on cross-examination of plaintiff, to ask him if he told the attorney who filed the petition in probate court to try to collect of defendant a $75 attorney's fee—and she claimed error because she was not permitted to introduce in evidence the $75 bill sent her by such attorney. She claimed that the court erred in not permitting her to testify that the expenditure of the funds represented by the three checks heretofore commented upon were "not expended for her benefit".

■ We do not believe that the trial court's frequent admonishments of her to answer responsively were either uncalled for or that his mode of admonishment was unduly harsh or prejudicial in the eyes of the jury. Furthermore, since we are unable to find any exception to have been taken to such action of the court, the error, if any, would be waived. As to the photo-

graphs, they would be wholly irrelevant and immaterial to the issues made in this case and therefore properly excluded. In view of the fact that the judgment as ultimately entered was based upon the notes and not upon the issues submitted under the plaintiff's alternative theory, the reasons why plaintiff filed the guardianship suit would be immaterial, and the subject of the $75 attorney's fee incident thereto would likewise be immaterial. The same thing would apply to any testimony by the defendant tending to establish the non-beneficial character of the expenditures represented by the three checks in question. Had the defendant requested and had submitted issues bearing upon the plaintiff's misuse or waste of her funds we might be required to discuss the foregoing at greater length. Since she did not do so, and since there was no issue bearing thereupon which served as a basis for the judgment ultimately entered, we do not believe further discussion is required.

■ The defendant claims that the court erred in rendering as a part of the judgment against her the costs of the trials which had gone before and which had resulted in mistrials. T.R.C.P. 131 provides that the party prevailing in a suit shall recover of his adversary all costs incurred therein, except where otherwise provided. T.R.C.P. 141 provides that "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." Certainly the discretion for assessment of the costs, other than the costs on appeal, was initially lodged in the trial court, if indeed they were not assessed in strict compliance with Rule 131. That being the case, we would have no authority to assess them differently, no abuse of discretion on the part of the trial court being made to appear.

The judgment is affirmed.